# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| **KATHLEEN EVANS,** | : | |
| **Plaintiff,** | : | **MEMORANDUM DECISION & ORDER** |
| **vs.** | | **CASE NO: 2:10-cv-0009** |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | | **MAGISTRATE JUDGE BROOKE C. WELLS** |
| | : | |
| **Defendant.** | | |
| | : | |

This matter is before the court on Plaintiff Kathleen Evans' appeal seeking reversal or remand of Defendant Michael J. Astrue's decision denying her claim for Disability Insurance Benefits (DIB) and granting her claim for Supplemental Security Income (SSI). Following briefing, the court heard oral argument on the matter on December 1, 2010. The court has carefully considered the memoranda, administrative record, along with the law and facts relating to the appeal. Now, being fully advised, the court renders the following Memorandum Decision and Order.

## PROCEDURAL HISTORY

In January 2000, Plaintiff filed applications for DIB and SSI, alleging disability since July 1995 (Tr.[1] 367-69). Her claims were denied initially, upon reconsideration and, after a hearing, in a decision by an administrative law judge (ALJ) issued on September 28, 2001 (Tr. 27-36, 344-55, 49-93). After the Appeals Council denied

---

[1]"Tr." refers to the administrative record that was filed with this court.

Plaintiff's request for review, Plaintiff commenced an action in this court for judicial review (Tr. 10-13).   On July 15, 2008, the court remanded the case to the Commissioner for further proceedings (Tr. 704).

On February 11, 2009, after a supplemental hearing, the ALJ denied Plaintiff's claims, finding she was not disabled at any time from October 1, 1995, when she stopped working, through the date of his decision (Tr. 684-99).  On September 10, 2010, the Appeals Council assumed jurisdiction of the case pursuant to 20 C.F.R. § 404.984 and issued a partially favorable decision, finding that Plaintiff was disabled as of December 1, 2002, but not before (Tr. 665-71, 758-60).   The timely appeal to this court followed.

## STANDARD OF REVIEW

The court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.[2]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  In determining whether substantial evidence supports the Commissioner's decision, the court examines the record as a whole, but does not reweigh the evidence.[4]  The court does not substitute its judgment for that of the agency.[5]

---

[2]Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3]Id.

[4]Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

[5]Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).

## BACKGROUND

In the February 11, 2009 decision denying Plaintiff's claims, the ALJ followed the sequential evaluation process set forth in the Commissioner's regulations[6] (Tr. 684-99). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 1, 1995 (Tr. 686). At step two, he found that from October 1, 1995, through September 28, 2001, her "severe"[7] impairments consisted of major depressive disorder, carpal tunnel syndrome and "mild white matter disease (said by some to be 'probable multiple sclerosis')" (Tr. 686). He further found at step two that Plaintiff had no severe impairments from September 29, 2001 forward (Tr. 686-87). At step three, he found Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of an impairment listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 587-89). The ALJ then found that from October 1, 1995, through September 28, 2001, Plaintiff had the residual functional capacity to perform unskilled sedentary work that did not require:

- lifting more than eight and one-half pounds at a time;

- standing or walking more than fifteen to twenty minutes at one time, nor more than two to three hours in an eight-hour workday;

---

[6]In evaluating disability, the Commissioner considers, in sequence: (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and if so, (5) whether the impairment prevents the claimant from doing any kind of work. Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988); 20 C.F.R. § 404.1520.

[7]An impairment or combination of impairments is "severe" if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1521.

- sitting more than forty-five to sixty minutes at a time, nor more than five to six hours in an eight-hour workday;

- overhead lifting or reaching;

- reaching, handling, and fingering more than frequently (½ to 2/3 of the day),
i.e., to further define this limitation, claimant could reach, handle and finger 2 to 3 minutes at a time, and about 3.5 to 4 minutes out of every 10 minutes, and due to occasional gripping difficulties, no breakables could be handled on the job;

- work at more than a low stress level, which means: 1) below average stress, and no significant stressors, such as significant production rate work (low production rate work could be performed), 2) working only occasionally with the general public (occasional phone work is possible), 3) only minimal interaction with supervisors and co-workers and 4) only minimal work setting changes;

- work at more than a low concentration level, which precludes such tasks as mental computations, sustained spontaneous speaking or sustained reading and writing, but still having average alertness and attentiveness;

- work at more than a low memory level, which means the ability to understand, remember and carry out simple one and two step instructions with the option to write things down or keep a list or diagram in sight to aid in memory, and only minimal changes in the work instructions from week to week;

- work in other than a clean environment with even temperatured air (not too hot due to her probably [sic] multiple sclerosis and no bright lights and no sustained visual tasks such as sustained reading

(Tr. 689). At step four, the ALJ found Plaintiff was unable to perform her past relevant work (Tr. 697). At step five, based on vocational expert testimony, the ALJ found Plaintiff could perform a significant number of jobs in the national economy, including the jobs of food-and-beverage order clerk, addresser, and charge-account clerk (Tr. 697-98). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 698).

On September 10, 2010, the Appeals Council assumed jurisdiction of the case (Tr. 665-71, 758-60). With regard to Plaintiff's claim for SSI, the Appeals Council decided that Plaintiff became disabled on December 1, 2002, the month she attained the age of 50 (Tr. 668-71). With regard to her claim for DIB, the Appeals Council adopted the ALJ's decision, finding that from October 1, 1995, through December 31, 2000, when her insured status for DIB expired, Plaintiff could perform a significant number of unskilled sedentary jobs in the national economy (Tr. 668-71).

**DISCUSSION**

On appeal, Plaintiff argues that the ALJ erred by: (1) failing to find that cervical degenerative disc disease, multiple sclerosis, personality disorder, and anxiety disorder were severe impairments; (2) according no weight to the opinion of Ms. Tibbs, a social worker, that Plaintiff's depression was disabling; and (3) failing to find her disabled based on the residual functional capacity set forth by the ALJ. For the reasons explained below, the court finds Plaintiff's arguments unpersuasive and affirms the Commissioner's decision.

(I)     The ALJ Properly Identified Plaintiff's Severe Impairments

The court finds substantial evidence supports the ALJ's finding that Plaintiff's degenerative disc disease, multiple sclerosis, personality disorder, and anxiety disorder were not severe impairments. With regard to degenerative disc disease, Dr. Reichman, a neurosurgeon, clarified that the results of an MRI scan of Plaintiff's cervical spine were "relatively unimpress[ive]" (Tr. 581), and subsequent nerve conduction studies confirmed that "very mild carpal tunnel syndrome"—not cervical radiculopathy—underlay Plaintiff's complaints of upper extremity pain (Tr. 591-93).

As to multiple sclerosis, the record does not contain a definitive diagnosis of multiple sclerosis.  MRI scans of the brain produced ambiguous findings consistent with multiple sclerosis as well as with Lyme disease, infarction, and remote trauma (Tr. 576, 587).   The ALJ's finding that Plaintiff's severe impairments included "mild white matter disease (said by some to be 'probabl[e] multiple sclerosis')" accurately interpreted the evidence of Plaintiff's frontal lobe abnormalities.

With regard to personality disorder and anxiety disorder, the psychologists who examined Plaintiff diagnosed her with depression, not personality disorder or anxiety disorder:  Dr. Harris (Tr. 231-32), Dr. Ririe (Tr. 319), and Dr. Allen (Tr. 607) diagnosed depressive disorder only.  These reports were sufficient to establish depression as Plaintiff's only severe mental impairment.  Ms. Tibbs, a social worker, was the only source who diagnosed Plaintiff with dependent personality disorder (Tr. 633-35).  However, a medically determinable impairment can only be established by evidence from an "acceptable medical source."[8]   A social worker is not an "acceptable medical source" under the regulations.[9]

Further, the court finds that even if the ALJ erred at step two as alleged, the error would be harmless.  As long as an ALJ finds one severe impairment at step two and proceeds to the next stage of the sequential evaluation, the failure to find that another particular impairment was severe is not reversible error.[10]

---

[8]20 C.F.R. § 404.1513

[9]Id.

[10]Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008); Dray v. Astrue, 353 Fed. Appx. 147, 149, 2009 WL 3821522 at **1 (10th Cir. Nov. 17, 2009) (unpublished).

(II)     Ms. Tibbs' Opinion Is Irrelevant to Plaintiff's Claim for DIB

On August 8, 2001, Carol E. Tibbs, L.C.S.W., reported that Plaintiff had marked

limitations in several areas of mental functioning and that she met the listed impairment

for affective disorders, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 (Tr. 637-48).  Ms.

Tibbs give no explanation for these findings other than to state that Plaintiff had

"demonstrated significant impairment over years," and the record contains no progress

notes by Ms. Tibbs that might support such findings.   Nevertheless, Plaintiff argues

that in evaluating Ms. Tibbs' opinion, the ALJ failed to comply with Social Security

Ruling 06-03p, which requires adjudicators to evaluate the opinions of unacceptable

medical sources, such as social workers, utilizing the factors set forth in 20 C.F.R. §

404.1527 for evaluating physicians' opinions.

The court rejects Plaintiff's arguments concerning Ms. Tibbs' opinion because

her opinion is irrelevant to the issue of whether Plaintiff is entitled to DIB.  As the

Commissioner granted Plaintiff's claim for SSI, finding she became disabled on

December 1, 2002, the remaining issue is whether Plaintiff became disabled on or

before December 31, 2000, her date last insured for DIB.  To be entitled to DIB, a

claimant must show she became disabled prior to the expiration of her insured status.[11]

 Ms. Tibbs did not address Plaintiff's functional limitations as of or before December 31,

2000, and did not express her opinion until August 2001, several months after Plaintiff's

date last insured.  To be material, evidence must relate to the time period for which

_____

[11]20 C.F.R. § 404.131; Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996); Flint
v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991).

benefits were denied.[12]   Therefore, the issue of whether the ALJ evaluated Ms. Tibbs'

opinion in accordance with SSR 06-03p is beside the point.  Because Ms. Tibbs'

opinion did not relate to the time period for which benefits were denied, her opinion is

irrelevant.

(III)     The ALJ Did Not Err at Step Five in the Analysis

Plaintiff also argues that Hayden v. Barnhart,[13] establishes she could not perform

the jobs of food-and-beverage order clerk, addressor, and charge account clerk.  The

court finds Plaintiff's argument unpersuasive.  In Hayden, the ALJ found plaintiff was

limited to occasional handling and fingering, but inconsistently found she could perform

her past relevant work as a receptionist, which required frequent handling.[14]  In this

case, no discrepancy existed between the ALJ's residual functional capacity finding and

his hypothetical question to the vocational expert.  The ALJ found Plaintiff was limited to

frequent reaching, handling and fingering, i.e., one-third to two-thirds of the time (Tr.

689).  Consistent with that finding, he asked the vocational expert to consider a person

who could reach, handle, and finger no more than frequently (Tr. 796).  Therefore, the

Hayden decision is inapposite.

Plaintiff also contends that because the Commissioner found she could perform

only a limited range of sedentary work (i.e., that she required a sit/stand option and

could sit for five-to-six hours per day as opposed to six hours), a finding of disability was

---

[12]Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3rd Cir. 1984).

[13]374 F.3d 986 (10th Cir. 2004).

[14]Id. at 990.

required.  In this regard, Plaintiff appears to confuse the capacity to perform a full range

of sedentary work with a limited range of sedentary work.  Although a person who

needs to alternate between sitting and standing cannot perform the *full* range of

sedentary work, there are some jobs in the national economy which allow a person to

"sit or stand with a degree of choice."[15]  In such cases, reliance on the Medical-

Vocational Guidelines[16] at step five to determine disability is improper, and "a

[vocational source] should be consulted to clarify the implications for the occupational

base."[17]  Here, the Commissioner did not find Plaintiff could perform the full range of

sedentary work and did not rely on the Guidelines; he found she could perform a limited

range of sedentary work and relied on vocational-expert testimony to show that a

significant number of jobs existed that Plaintiff could perform.  Moreover, it is well

settled that an ALJ may rely on a vocational expert's testimony to find that jobs exist

that a claimant with a residual functional capacity for sedentary work and a need for a

sit/stand option can perform.[18]

For these reasons, the court finds no error by the Commissioner at step five of

the sequential evaluation.

---

[15]SSR 83-12.

[16]20 C.F.R. Part 404, Subpart P, Appendix 2.

[17]Id.

[18]Maynard v. Astrue, 276 Fed. Appx. 726, 2007 WL 495310 (10th Cir. Feb. 16, 2007) (affirming Commissioner's decision that claimant who was limited to sedentary work with a sit/stand option was not disabled); Helmer v. Barnhart, 112 Fed. Appx. 705, 2004 WL 2352107 (10th Cir. Oct. 20, 2004).

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision that Plaintiff's disability commenced on December 1, 2002, is hereby AFFIRMED. It is further ORDERED that consistent with the United States Supreme Court's decision in <u>Shalala v. Schaefer</u>,[19] judgment shall be entered in accordance with Fed. R. Civ. P. 58.

Dated this 17th day of December, 2010

BY THE COURT:

_____

Brooke C. Wells
United States Magistrate Judge

---

[19]509 U.S. 292, 296-302 (1993).